UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 11-CV-193 (JFB) (WDW)

———————

ROBERT M. FEDER,

Plaintiff,

VERSUS

MICHAEL J. SPOSATO, ET AL.,

Defendants.

———————

**MEMORANDUM AND ORDER**
May 7, 2014

———————

JOSEPH F. BIANCO, District Judge:

Robert M. Feder ("plaintiff"), proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Armor Correctional Health Services of New York, Inc. ("Armor"), and Dr. Chang Soo Rhim ("Rhim"), alleging that Armor and Rhim violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with adequate medical care while he was an inmate in the Nassau County Correctional Center ("NCCC").[1] Specifically, plaintiff claims that he was deprived of morphine medication for his physical pain, and psychiatric medication for his mental health issues.

Before the Court is Armor and Rhim's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court (with notice to plaintiff) converted into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the Court grants the motion in its entirety. Specifically, there is no evidence that Rhim was deliberately indifferent to plaintiff's pain by failing to prescribe him morphine. In fact, it is uncontroverted that Rhim prescribed plaintiff Tylenol #3 and monitored plaintiff's morphine withdrawal

---

[1] Plaintiff initially commenced this action on January 10, 2011 against Michael J. Sposato ("Sposato"), James L. Capoziella ("Capoziella"), Dr. Benjamin Okonta ("Okonta"), Dr. Vincent Manetti ("Manetti"), Dr. Kanth ("Kanth"), Captain Ford ("Ford"), and CO Mark Zimmer ("Zimmer"), alleging violations of his civil rights pursuant to Section 1983. On December 17, 2012, plaintiff filed an amended complaint, adding as defendants Nassau County (the "County"), the NCCC, Armor, and Rhim, and adding a claim pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). The parties have since stipulated to the dismissal of plaintiff's claims with prejudice as to all defendants except Armor and Rhim.

1

upon plaintiff's transfer to the NCCC. Although plaintiff contends that the Tylenol #3 was insufficient to manage his pain, plaintiff's disagreement with Rhim over his course of treatment does not rise to the level of an Eighth Amendment violation. In other words, given the uncontroverted evidence of the treatment plaintiff did receive, no rational jury could find that Rhim was deliberately indifferent to a serious medical need. In addition, because Rhim's failure to prescribe morphine does not constitute a constitutional violation, plaintiff has no basis to hold Armor—Rhim's employer—liable. Finally, plaintiff cannot hold Armor liable for its employees' failures to prescribe morphine or psychiatric medications because, even if any of those failings did violate plaintiff's constitutional rights, there is no evidence in the summary judgment record establishing that Armor had a policy or custom that led to those alleged constitutional violations.

I. BACKGROUND

A. Facts

1. The Amended Complaint

The following facts are taken from the amended complaint filed on December 17, 2012 ("Am. Compl."), and are not findings of fact by the Court. Instead, the Court recites plaintiff's allegations in order to provide context for the present motion.

Plaintiff is a New York State prisoner serving a sixteen year sentence. (Am. Compl. at 4, ¶ IV.) On August 2, 2012, the Nassau County Sheriff's Department transferred plaintiff from the Downstate Correctional Facility to the NCCC. (*Id.*) Although plaintiff is in a wheelchair and cannot walk, he was handcuffed, shackled, and told to crawl in and out of an SUV, which caused him great pain. (*Id.*)

While at the NCCC, plaintiff alleges that he did not receive proper medical treatment for his physical pain and mental health issues. With respect to his physical pain, plaintiff had been taking morphine pain medication for almost two years before arriving at the NCCC. At the NCCC, doctors working for Armor told plaintiff, "We don't give that here." (*Id.*) Plaintiff persisted in attempting to obtain morphine by asking all medical personnel he saw for his morphine medication. (*Id.*) Rhim did prescribe Tylenol #3 for plaintiff; however, this did nothing to alleviate plaintiff's pain or morphine withdrawal symptoms. (*Id.* at 4, ¶ IV.A.) Thereafter, plaintiff endured one week of throwing up, shakes, and fever as a result of morphine withdrawal. (*Id.* at 7.)

Plaintiff filed a grievance, which was denied. (*Id.*) He also sent a letter dated August 13, 2012 to this Court, requesting information on how to amend the complaint that he had already filed in this action (presumably so that he could add allegations concerning the denial of morphine). (*Id.*; *see* ECF No. 56.) By letter dated August 17, 2012, the Court replied and sent plaintiff information on how to amend his complaint. (Am. Compl. at 7; *see* ECF No. 57.) Two days later, on August 19, 2012, Rhim learned that plaintiff was seeking to amend his complaint and asked plaintiff about it. (Am. Compl. at 7.) According to plaintiff, Rhim said that the NCCC had no record of plaintiff being on morphine, and said that the NCCC would request his medical records from Green Haven Correctional Facility ("Green Haven"), where plaintiff had previously been an inmate. (*Id.*) Plaintiff had already signed a release authorizing the NCCC to access his

2

medical records at Green Haven on August 3, 2012. (*Id.*)

As for his mental health issues, plaintiff consulted with Manetti at the NCCC on August 6, 2012. (*Id.*) Before prescribing plaintiff any medication, Manetti told plaintiff that he needed to send a release to Green Haven to find out what medications plaintiff was on at the time. (*Id.*) In the meantime, Manetti prevented plaintiff from taking his mental health medication, which plaintiff had brought with him. (*Id.*) One week later, plaintiff met with Manetti again, and Manetti informed him that he had experienced difficulty contacting plaintiff's doctor at Green Haven. (*Id.*) Plaintiff could see his Green Haven file on Manetti's desk, however, and he alleges that Manetti never had any intention of treating his mental illness. (*Id.*) As a result of Manetti's failure to prescribe plaintiff any psychiatric medication, plaintiff experienced panic attacks and hallucinations, and worried that he might hurt himself. (*Id.* at 8.) Plaintiff did talk to a social worker as treatment for his mental illness. (*Id.*)

By letter dated October 21, 2012, plaintiff informed the Court that he had been transferred back to Green Haven. (ECF No. 77.)

### 2. Summary Judgment Record

In support of their motion, Armor and Rhim submitted a "Drug and Alcohol Withdrawal Assessment Flowsheet," which demonstrates how Armor employees monitored plaintiff's morphine withdrawal from August 3, 2012 to August 8, 2012—the first six days after his transfer to the NCCC. (Doody Decl., Mar. 21, 2013, Ex. B ("Withdrawal Assessment").[2]) This form, signed by Rhim, indicates that plaintiff experienced only "mild nausea, no vomiting and/or diarrhea," mild anxiety, and "very mild" headaches during that period of time. (*Id.*) In deposition testimony submitted by Armor and Rhim in support of their converted motion for summary judgment, plaintiff confirmed that Armor employees monitored him during his morphine withdrawal. Specifically, he testified that a nurse on the Medical Unit visited him "[t]hree times a day." (Doody Decl., Feb. 21, 2014, Ex. 3, Dep. of Robert Michael Feder, May 30, 2013 ("Feder Dep"), at 71.)

During his morphine withdrawal and afterward, plaintiff filed multiple "Sick Call Request" forms complaining about physical pain and demanding pain medication. (*See* Pl.'s Reply Ex. D.) He filed such a form on August 8, August 13, September 6, September 13, September 19, September 25, October 4, and October 11, 2012. (*Id.*) Although plaintiff was not given morphine, Armor's records (which are uncontroverted) show that Rhim prescribed him Tylenol, Motrin, and Tylenol #3. Specifically, Rhim and other Armor employees prescribed the following medications on the following dates: Tylenol on August 3, 2012; Tylenol #3 on August 4 and August 9, 2012; 400 mg of Motrin two times per day for three days, beginning on August 8, 2012; and Tylenol #3 two times per day for the period from August

---

[2] By letter dated February 10, 2014, plaintiff objects to Armor and Rhim's use of his medical records, and he requests that the Court "look into" how they acquired his medical records without his consent. (*See* ECF No. 127.) "Where, however, a litigant puts his physical or mental condition into issue in the litigation, he waives his right to privacy in any relevant medical records." *Manessis v. N.Y.C. Dep't of Transp.*, No. 02-CV-359SASDF, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002); *see, e.g.*, *Anderson v. City of New York*, No. 05-CV-4422 (ERK) (MDG), 2006 WL 1134117, at *1 (E.D.N.Y. Apr. 28, 2006) ("[T]his Court finds that plaintiff has placed her mental condition at issue in this litigation and consequently has waived her right to prevent the disclosure of her mental health records.").

17 to October 19, 2012. (*See* Doody Decl., Feb. 21, 2014, Ex. 6, Order Sheet.) Plaintiff confirmed in his deposition that he received Tylenol #3 for his pain, which he described as a "small dosage opiate" that was much weaker than his morphine medication. (Feder Dep. at 68.)

Armor has also submitted Manetti's notes on plaintiff's mental health. (Doody Decl., Mar. 21, 2013, Ex. C ("Mental Health Notes").) There, Manetii noted that there were "no objective signs of any hallucinations or delusions," of which plaintiff complained, and that his diagnostic impression was that plaintiff was malingering. (*Id.*) Plaintiff has countered this evidence with medical records showing that, before his incarceration at the NCCC, plaintiff had been hospitalized for three weeks for serious psychiatric problems. (*See* Pl.'s Reply Ex. G.)

B. Procedural History

Plaintiff commenced this action on January 10, 2011 against Sposato, Capoziella, Okonta, Manetti, Kanth, Ford, and Zimmer. At about the same time, on December 28, 2010, plaintiff commenced a related action against Edward P. Mangano ("Mangano"), Sposato, Hon. Mureal Berkowitz ("Berkowitz"), Hon. Kathleen M. Rice ("Rice"), and the County. (*See Feder v. Cnty. of Nassau*, No. 10-CV-6034 (JFB)(WDW).) On February 3, 2012, the Court dismissed plaintiff's claims against Mangano, Berkowitz, and Rice, and, with the consent of the parties, consolidated that case with this case. Thereafter, on December 17, 2012, plaintiff filed an amended complaint in this action, adding as defendants the County, the NCCC, Armor, Manetti, and Rhim.

Armor, Rhim, and Manetti moved to dismiss the amended complaint on March 21, 2013. Plaintiff opposed the motion on April 22, 2013, and Armor, Rhim, and Manetti replied on May 6, 2013. Plaintiff filed a sur-reply on June 12, 2013, to which Armor, Rhim, and Manetti objected on June 18, 2013.

While the instant motion was pending, on August 15, 2013, the parties stipulated to the dismissal of all claims with prejudice against Sposato, Ford, Zimmer, the County, the NCCC, Capoziella, Okonta, Manetti, and Kanth, which the Court so ordered on August 22, 2013. As a result of the stipulation of dismissal, Armor and Rhim are the only remaining defendants in this action.

Because Armor and Rhim submitted medical records as exhibits to their motion to dismiss, the Court converted their motion into a motion for summary judgment on December 18, 2013. The Court also afforded plaintiff the opportunity to submit additional arguments and supporting evidence in opposition to Armor and Rhim's motion, and provided plaintiff with a copy of the Court's Local Rules 56.1 and 56.2. On February 4, 2014, plaintiff submitted a letter in response to the Court's order. With leave of the Court, Armor and Rhim submitted a reply to plaintiff's letter, along with supporting evidence, on February 21, 2014. Plaintiff then requested leave to submit additional evidence in opposition to the summary judgment motion, which the Court granted on February 24, 2014. Plaintiff submitted additional evidence on March 19, 2014. This matter is now fully submitted, and the Court has fully considered all submissions of the parties.

II. STANDARD OF REVIEW

It is well accepted that "'[w]hen matters outside the pleadings are presented in response to a [Fed. R. Civ. P.] 12(b)(6) motion,' a district court must either 'exclude

4

the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988)); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Generally, "a district court has discretion to convert a motion to dismiss into a motion for summary judgment." *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005). Exercise of such discretion will turn on "'whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'" *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1366 (3d ed. 2004)).

Here, the Court has concluded, in its discretion, that conversion of defendants' motion to dismiss is proper. Specifically, defendants expressly referenced and submitted materials outside of the pleadings for the Court's consideration. Moreover, plaintiff was given the opportunity to present any material pertinent to a summary judgment motion and was supplied with copies of Local Civil Rule 56.1 and 56.2 so that he understood the consequences of a motion for summary judgment. *See Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009). Thus, the Court will review the converted motion under the governing standards for summary judgment.

The moving party bears the burden of establishing that it is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). This burden requires a movant to establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to do so, a party must support their position by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (emphasis in original). As the Supreme Court stated in *Anderson*, "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. Discussion

Pursuant to Section 1983, Plaintiff asserts that Armor and Rhim denied him medical care in violation of the Eighth Amendment. To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

As an initial matter, the Court notes that Armor is a private entity contracted to provide medical services to inmates at the NCCC (Doody Aff. ¶ 3), and Manetti and Rhim were both employed by Armor at the NCCC at all times relevant to this case (*id.* ¶¶ 4–5). Because Armor was hired to fulfill the state's constitutional obligation to provide necessary medical care for its inmates, Armor and Rhim were "acting under the color of state law" for purposes of Section 1983. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 54 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to [plaintiff]; the State delegated that function to respondent [doctor]; and respondent voluntarily assumed that obligation by contract."); *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 202 (N.D.N.Y. 2006) ("It is clear that medical care providers working in a prison are state actors."). The Court thus proceeds to consider whether Armor and Rhim violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, such that they would be liable to plaintiff under Section 1983.

### A. Rhim

Plaintiff alleges that Rhim was deliberately indifferent to plaintiff's serious medical needs by denying plaintiff morphine. As discussed *infra*, based upon the uncontroverted evidence in the record, no rational jury could conclude that Rhim was deliberately indifferent to plaintiff's serious medical needs by denying him morphine.

#### 1. Legal Standard

"Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth

Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). The Court analyzes plaintiff's deliberate indifference claim under Eighth Amendment jurisprudence.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment," and therefore, "states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (citation and internal quotation marks omitted). As the Second Circuit has explained,

> [t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with "deliberate indifference" to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice.

*Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (internal citations omitted). Within this framework, "[d]eliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007). Deliberate indifference exists "when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). Where an official exhibits deliberate indifference to a known injury, he or she may be held liable under Section 1983. *See Ortiz v. Goord*, 276 F. App'x 97, 98 (2d Cir. 2008).

The deliberate indifference standard consists of both objective and subjective elements: (1) "the alleged deprivation must be, in objective terms, 'sufficiently serious,'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) "the charged official must act with a sufficiently culpable state of mind," *id.*; *see also Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (elaborating on two-part test and describing first prong as objective and second prong as subjective); *Hayes*, 84 F.3d at 620 (stating that deliberate indifference test requires a plaintiff to show both an objective "substantial risk of serious harm," *and* that "prison officials possessed sufficient culpable intent"). Thus, in order for a plaintiff to establish a deliberate indifference claim, he must satisfy both the objective and subjective prongs. *See generally Allah v. Michael*, 506 F. App'x 49, 51 (2d Cir. 2012) (affirming district court's dismissal of plaintiff's deliberate indifference claim where plaintiff failed to satisfy objective prong of the test); *Goris v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010) (affirming district court's grant of summary judgment to defendants where plaintiff failed to satisfy objective prong of deliberate indifference claim); *Skates v. Vanbockstaele*, No. 11-CV-4414 (LAP)(MHD), 2013 WL 658253, at *4–5 (S.D.N.Y. Feb. 25, 2013) (granting motion to dismiss where plaintiff could satisfy

neither the objective nor the subjective prongs to his deliberate indifference claim).

2. Application

Here, plaintiff alleges that Rhim denied plaintiff adequate medical care by discontinuing plaintiff's morphine treatment and prescribing plaintiff Tylenol #3 instead. The Court considers the objective and subjective elements of this claim.

a. Objective Element

As previously set forth, to determine whether a deprivation of medical care meets the objective prong, a plaintiff must show that "the alleged deprivation [was] . . . in objective terms, 'sufficiently serious.'" *Hathaway*, 37 F.3d at 66 (quoting *Wilson*, 501 U.S. at 298). That is, that the alleged "deprivation 'den[ied] the minimal civilized measure of life's necessities.'" *Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996) (alteration in original) (quoting *Wilson*, 501 U.S. at 298). It is well known that "medical conditions[] may be of varying severity," but "[t]he standard for Eighth Amendment violations contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway*, 37 F.3d at 66).

There is no specific yardstick by which courts are to measure the seriousness of a prisoner's medical need. There are factors, however, that courts have referred to in making such an assessment, including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702).

Considering the facts in the light most favorable to plaintiff, the Court cannot determine as a matter of law whether plaintiff's condition—physical pain and morphine withdrawal—constituted a serious medical need. Armor's Withdrawal Assessment, signed by Rhim, shows that plaintiff experienced only "mild nausea, no vomiting and/or diarrhea," mild anxiety, and "very mild" headaches during the first six days following his transfer to the NCCC. (Withdrawal Assessment.) In his letter to the Court in response to the Court's order converting the instant motion into one for summary judgment, plaintiff counters that he suffered "total agony," "extreme pain," vomiting, and an inability to eat that lasted ten days. (Pl.'s Letter, Jan. 29, 2014.) The Court need not resolve this factual dispute to grant summary judgment to Rhim, however, because, as discussed *infra*, the uncontroverted evidence makes clear that plaintiff cannot satisfy the subjective prong of his deliberate indifference claim, even construing the evidence in plaintiff's favor. *See Warren v. Purcell*, No. 03-CV-8736 (GEL), 2004 WL 1970642, at *8 (S.D.N.Y. Sept. 3, 2004) (where a plaintiff cannot establish the subjective prong to his deliberate indifference claim, the court need not resolve the issue of whether he has satisfied the objective prong and shown a serious medical need). For this reason, even if a factfinder credited plaintiff's assertions concerning the extent of his pain and suffering, the fact that no rational jury could find that Rhim acted with the requisite culpable state of mind requires the grant of summary judgment for Rhim.

b. Subjective Element

The second requirement for an Eighth Amendment violation asks whether a prison

8

official acted with a "sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. This occurs when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Stated differently, deliberate indifference requires a greater showing than simply "an inadvertent failure to provide adequate medical care" or "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 105–06; *see Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" (quoting *Chance*, 143 F.3d at 703)).

Here, it is uncontroverted that plaintiff was examined shortly after his transfer to the NCCC, and Rhim and others in Armor's employ monitored plaintiff's morphine withdrawal for the first six days following his transfer. (*See* Withdrawal Assessment.) Although plaintiff asserts in a conclusory fashion that Rhim "did nothing" for his withdrawal (Pl.'s Letter, Jan. 29, 2014), it is undisputed that Rhim and others monitored plaintiff's morphine withdrawal and prescribed him Tylenol #3. In essence, plaintiff disagrees with Rhim's determination concerning the strength of pain medication most appropriate for plaintiff's condition. However, "[t]he failure to provide stronger pain medication does not constitute deliberate indifference." *Harris v. Westchester Cnty. Med. Ctr.*, No. 08-CV-1128 (RJH), 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011). "It is well-established that mere disagreement over . . . proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. "'The prisoner's right is to medical care—not the type or scope of medical care which he personally desires.'" *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867–68 (2d Cir. 1970) (quoting *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)); *see also Barrett v. Goldstein*, No. 07-CV-2483 (RJD)(LB), 2009 WL 1873647, at *3 (E.D.N.Y. June 29, 2009) (stating that "mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment" (internal quotation marks and citation omitted)). Indeed, case law is very clear that a court's role in reviewing disputes concerning an inmate's medical treatment is "not [to] sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, [a court] will not second guess the doctors.'" *Hathaway*, 37 F.3d at 70 (quoting *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987)); *see also Butler v. Suffolk Cnty. Corr. Facility Med. Ctr.*, No. 11-CV-1463 (JFB)(ETB), 2013 WL 1193065, at *8 (E.D.N.Y. Mar. 22, 2013) ("[T]he Court will not attempt to don the doctor's white coat in place of its judicial black robe."); *Madison v. Nesmith*, No. 06-CV-1488(NAM/DEP), 2009 WL 666398, at *9 (N.D.N.Y. Mar. 11, 2009) ("[T]he Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question of what diagnostic techniques and treatments should be administered to an inmate is a 'classic example of a matter for medical judgment' and accordingly, prison medical personnel are vested with broad discretion to determine what method of care

and treatment to provide to their patients." (quoting *Estelle*, 429 U.S. at 107)).

Given that it is uncontroverted that Rhim monitored plaintiff's morphine withdrawal and prescribed him pain medication, no rational jury could conclude that Rhim was deliberately indifferent to plaintiff's medical needs. *See, e.g.*, *Washington v. City of New York*, No. 10-CV-389 (LTS)(JLC), 2011 WL 566801, at *2 (S.D.N.Y. Feb. 15, 2011) ("The documented medical attention paid to Plaintiff's injury and the pain he reported is patently inconsistent with the showing of deliberate indifference that would be required to satisfy the subjective element of the claim."). Other courts addressing similar factual circumstances have reached the same conclusion. *See Hill v. Cavanagh*, 223 F. App'x 595, 596 (9th Cir. 2007) (concluding that state prison officials were not deliberately indifferent to a state prisoner's medical needs, including alleged hypertension and back and knee pains, where medical staff monitored prisoner and prescribed Motrin for his pains); *Mack v. Wilkinson*, 90 F. App'x 866, 867–68 (6th Cir. 2004) (affirming district court's grant of summary judgment on deliberate indifference claim to medical defendants where medical staff treated plaintiff's back pain with Motrin and took necessary steps to have plaintiff supplied with a substitute prescription while his Motrin was refilled); *Lewis v. Naku*, 650 F. Supp. 2d 1090, 1093 (E.D. Cal. 2009) (where defendant doctor prescribed Motrin for plaintiff's ailments, court noted that "[w]hether [d]efendant made the correct diagnosis is an issue of negligence and not deliberate indifference"); *Ortiz v. Makram*, No. 96-CV-3285 (AGS), 2000 WL 1876667, at *10 (S.D.N.Y. Dec. 21, 2000) ("It is not for this Court to determine whether [plaintiff's] condition warranted Percocet, or whether, in light of his condition and his history of drug addiction . . . [plaintiff] should have received Motrin. It is sufficient that this case . . . involved a consideration of the inmate's overall condition and a medical determination as to the appropriate treatment. [Plaintiff's] disagreement with that judgment does not render it constitutionally infirm.").

Accordingly, with respect to plaintiff's Section 1983 claim against Rhim, there is no genuine dispute as to any material fact, and Rhim is entitled to judgment as a matter of law.

B. Armor

Plaintiff also seeks to hold Armor liable for its employees' denial of morphine and psychiatric medications. As set forth *infra*, the Court concludes that summary judgment for Armor is warranted.

1. Legal Standard

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," but may be held liable where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. 658, 691, 694 (1978). Since then, in *Rojas v. Alexander's Department Store, Inc.*, the Second Circuit explicitly extended *Monell* to Section 1983 suits against private employers. *See* 924 F.2d 406, 408 (2d Cir. 1990). There, the Second Circuit held, "Private employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Id.* (emphasis in original) (quoting *Monell*, 436

U.S. at 691); *see Green v. City of New York*, 465 F.3d 65, 82 (2d Cir. 2006).

2. Application

a. Failure to Prescribe Morphine

Here, as noted *supra*, plaintiff has not demonstrated that the deprivation of morphine by Rhim violated his constitutional rights. Accordingly, there is no basis on which plaintiff could hold Armor liable for Rhim's action under *Monell*. When a plaintiff lacks an underlying claim of a deprivation of a constitutional right, the *Monell* claim must be dismissed, as well. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24–25 (E.D.N.Y. 2013).

Even assuming *arguendo* that the absence of an underlying constitutional violation did not preclude a *Monell* claim in this case, the Court concludes that Armor would still be entitled to summary judgment because of the absence of any evidence of an unconstitutional policy, practice, or custom by Armor as it relates to the denial of morphine to plaintiff. The only hint of such a policy comes in the amended complaint, in which plaintiff alleges that Armor never prescribed morphine to inmates. (*See* Am. Compl. at 4, ¶ IV (in response to plaintiff's request for morphine, Armor doctors told him, "We don't give that here.").) However, plaintiff did not submit any supporting evidence in opposition to the present motion for summary judgment, and "'[c]onclusory allegations of municipal liability will not defeat a motion for summary judgment on a *Monell* claim.'" *Carter v. Cnty. of Suffolk*, No. 12-CV-1191 (JFB)(ARL), 2013 WL 6224283, at *4 (E.D.N.Y. Dec. 2, 2013) (quoting *Sheikh v. City of New York, Police Dep't*, No. 03-CV-6326 (NGG), 2008 WL 5146645, at *11 (E.D.N.Y. Dec. 5, 2008)).

b. Failure to Prescribe Psychiatric Medication

For substantially the same reasons, plaintiff cannot hold Armor liable for Manetti's failure to prescribe him psychiatric medications.[3] Plaintiff has neither alleged any facts nor submitted any evidence establishing that Manetti was acting pursuant to an Armor policy or custom when he denied plaintiff psychiatric medication. Accordingly, the Court must grant summary judgment to Armor on this claim. *See Carter*, 2013 WL 6224283, at *4 ("Because there is absolutely no evidence of an unconstitutional policy, practice, or custom by the County, the Court concludes that the County is entitled to summary judgment on plaintiffs' Section 1983 claim.").

* * *

In sum, plaintiff has presented no evidence that would permit a reasonable jury to find Armor liable for the alleged constitutional violations committed by its

---

[3] As noted, the parties have stipulated to the dismissal of all claims against Manetti. The Court thus considers plaintiff's claim that he was denied psychiatric medication only insofar as it bears on Armor's liability under Section 1983.

employees, and the Court thus grants summary judgment to Armor.[4]

### IV. CONCLUSION

For the reasons set forth herein, the Court grants Armor and Rhim's motion for summary judgment. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: May 7, 2014
      Central Islip, NY

\* \* \*

Plaintiff proceeds *pro se*. Defendants Armor and Rhim are represented John J. Doody and Suzanne Emily Aribakan, Lewis Brisbois Bisgaard & Smith, LLP, 77 Water Street, Suite 2100, New York, NY 10005.

---

[4] Because the Court concludes that Armor and Rhim are entitled to summary judgment as to all claims on the merits, the Court need not address Armor and Rhim's affirmative defense that plaintiff failed to exhaust his administrative remedies before filing suit in federal court. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (prisoner's failure to exhaust administrative remedies is affirmative defense).